Thank you, Your Honor. My name is Daniel Shamus, and I represent defendants in this action. Defendants are appealing one aspect of a district court's grant of a preliminary injunction, what we have called the Conducting Business Provision. This provision enjoins defendants from conducting any business with any individuals or entities that are identified on ExamWorks' spreadsheet, and that is roughly 150,000 individuals and entities. So I think that's one way to read it. I mean, I think that there may be some language and other portions of the order that suggest the district court might have intended something a little bit more narrow. But taking your interpretation, would it make any difference if Paragraph 6 of the… are hereby enjoined from soliciting any business, entities, or individuals that may be included in the trade secret package? Well, it would be much better if we could accept business. I mean, that one thing about it, that we couldn't even accept business, was way too far. But so if we agree we can accept business and we look at solicitation, the answer is no, we should still be able to solicit. The only bar should be using their trade secrets. And we know exactly what the district court held, what were the trade secrets. And this is on pages 11 and 12 of the record in the court's order. There were only four categories of trade secrets, none of which were the identities of the customers or their contact information. So the court said exam works. Well, the court did find compilations that your clients took, which contained the identities of clients to be trade secrets, correct? Well, yes, but the court held about that was the case-specific doctor and revenue information and the court. Go ahead. So could the court have said, I understand your objection to the order, which is you can't accept any business. Could the court have said, A, you may not solicit business from anyone using the trade secrets. Let's call them that. B, to the extent you do business with anyone identified in this trade secret, we want you to affirmatively demonstrate that you did not use the trade secrets to contact them. Yes, your honor. That would be perfectly fine. Any injunction in joining us from using the trade secrets. And that's actually in the elsewhere in the injunction that we're not allowed to use it and we have to give it back. We've done that completely and all that. Right. But now I ask something different. I ask something different. I know you're not entitled to use them. Here's what, here's, here's what troubles me about this case. And I'm trying to view it from the district court's perspective. You've got a fast developing preliminary injunction hearing. The court has got some concerns about your client's responses to discovery. It's not sure it's being told the whole story. And so it says, wait, pendente lite, until we get to a trial, don't deal with anybody on the, who's identified in the trade secrets. That order, if it were a permanent injunction, it seems to me would play plainly be too broad because you can accept business from people who come to you. So I'm trying to figure out if the court perhaps may have been overbroad, but should have said something like, look, I'm going to, if you want to do business with anybody who's identified in the trade secrets, you're going to have to demonstrate you didn't use the trade secrets to get them. Not that I've just enjoined you from using them, but I'm going to require some sort of affirmative showing from you that you came across them in some, in some different, innocent way. Yes. And I think that's a great idea. We're certainly willing to do that. And we've outlined in our papers, the several different ways that we can identify exactly who we want to do business with. There are publicly available sources online where there are tens and thousands of applicant attorneys, doctors, QMEs. There's a whole area where we can just go online, find them and do business with them, whether we solicit them or accept their business. And the injunction is prohibits that completely. Let me, let me make sure I understand your position because I think the most restrictive, you know, injunction tying your hands is essentially the way you're reading this preliminary injunction, which is you're barred from conducting business with anybody that's in the bundle of trade secret materials. Right. So that's the most restrictive. And then there's the possible approach suggested by Judge Hurwitz, which is to say, okay, well, you could solicit and do business with, with folks, but you've got to show an independent source, essentially, that's separate and apart from the trade secret. And then there's kind of the middle of which is, well, you've gotten a lot of trade secret materials. So the interim while awaiting trial or dispositive motion work, you're going to be prohibited from soliciting business as long as the information is contained within the bundle of trade secret materials. So you, you said Judge Hurwitz's approach, no problem with that. What about that middle approach of enjoining you from soliciting folks who may, they may also be on the list because it's hard at this stage of the litigation to figure out, okay, well, did you help to what extent did you review the list? Did you learn the list already? So the independent source issue may not be adequate to satisfy the district court's concern. If that's the case, would that also be acceptable? No, unfortunately, no, Your Honor. And that's because the available jobs in this industry all involve reaching out to various players in this system and trying to do business with them. Like for example, my clients, Todd Baldini and Stuart Gerard were terminated from IPM, which is the name of their former employer who they left exam works to join. And when they were there, IPM has a list of about 50,000 customers or players in the workers' compensation med legal world. And they would be prohibited from using their list. So that's one of the ways, like why would my clients working at a third-party employer, why would that somehow using their list to do business with their clients, why would that be restricted? They can't work. They'd be fired or they can't get a job. And that's the problem with that middle approach. Solicitation should be barred only where the clients themselves are trade secrets. And here there's no argument on either side. District court didn't find it. Exam works has never argued it. They've only argued that the information on these spreadsheets about revenue and about relationships and length of all of that, which we don't have anymore. Has your clients used any of the trade secret compilations of customers to solicit any customers? Did they actually, and if so, what number of customers was that? The only thing we used was we used a spreadsheet of just contact information, not the trade secret material identified. And just to solicit about, well, as we say in the papers, we combined four lists together. There was the exam works list with the Feinberg list, with the CAA list, with the IPM list. And we got a list of 2,400 applicant attorneys, most of whom were on the other three lists anyway. We combined those lists to send out a solicitation of doing what we call PTP care, which is primary treating physician work, which isn't med legal. It doesn't compete with exam works, but that's what we did with that. And so we would be okay with a bar soliciting the clients that are unique to that list to exam work. So after we combined the 2,400 list of 2,400 applicant attorneys, any one of those 2,400 that were not on the Feinberg, IPM, or CAA list that were just on the exam works list, we can't solicit those or do business with those. We're fine with that. But 150,000 is just, it's undisputed that that takes us out of the entire industry, that we have not been able to and that we can't do anything because exam works, unfortunately, does business with basically everybody in these spaces. And so we don't have that list anymore. So we can't even know. We don't notice of who we're not allowed to work with. Instead, we look at, well, this person is an applicant attorney. Surely they probably have done business with exam works before. So we self-police and we say, well, we can't work with them because they're certainly on their list. And therefore, the junction has that problem as well of just being an incredibly overbroad list that's kept us, my clients, unemployed for six months now. And it's impossible to live under those circumstances. And unless the panel has more questions, I'd like to reserve my remaining five minutes. Can I ask, have you made any efforts to go back to the district court and explain some of these points? Yes, your honor. We brought a motion to stay the injunction while we do the appeal for the reasons we've said. The court only ruled on it recently too, not in the beginning, but recently the court said, no, I think for the reasons I laid out before, the injunction must remain exactly the way it is now. As we've said, the court has, the district court has appointed exam works to decide because the court said, we know it's overbroad. The court said, I understand it's overbroad, but let's have settlement conference. So exam works can decide whether or not it's going to infringe on their trade secrets. And not surprisingly, those settlement talks have gone nowhere. And then the injunction is exactly where it is. So with that, I'll reserve. Let me ask you counsel, what's the status of the litigation below? You have a trial date coming up? Yeah, it's in next year. I don't have it in front of me, but it's next year with discovery is going to end in December. So discovery is almost over. And, and then we're just getting ready for trial. But, but, and so with that, I would submit and reserve my time for rebuttal. Thank you. All right. Good afternoon, your honor. I'm here on behalf of the Abheli. As a district court found initial discovery has already produced substantial evidence that the defendant stole vast quantities of trade secret information from exam works or the purpose of setting up a business to compete directly with exam works that the defendants in fact began to execute on that plan using the trade secret information they stole, sharing it within their new company, IPM. And in fact, unlawfully soliciting exam work customers and that the defendants were not honest in their initial representation to the district court about the scope of their theft under these circumstances. So let's, let's assume, I assume for present purposes, that's all true. And, and I think those findings are probably well supported by the record, but can the district court prohibit these folks as bad actors as they may be from doing any business with anybody who ever did business with you? So what the defendants are enjoying from is doing business with exam works, customers whose information they stole. Right. So let's assume, let's assume I'm an exam works customer. And I find out that these, these guys have opened their business. And I call them and say, Hey, I hear you have a business. And I'd like to do business with you. And they must say no. Yes. As the defendants acknowledge, reply, brief. Yes. So tell me what, tell me where in California law, since we're dealing with California law here, there is something that prohibits them from doing business with people if they're not using the trade secrets in any way to solicit them. So as the, as the defendants acknowledge at reply, brief age eight, it is consistent with California and federal law to, to enjoin a defendant from doing business with any customer they unlawfully solicited. And the district court made a factual finding here that the March 19th email from Mr. Gerard to Ms. Dahada and their new business partner, Dr. Feinberg stating that Mr. Gerard had used the master exam works client spreadsheet to last out their message was evidence that the defendants had solicited a vast number of exam now, Mr. Gerard has not all, but not all, but a large number. So we don't know from that email, but with respect to any given name on that list, the ponderance of the evidence at primary hearing state primary injunction stage was that that customer had been solicited. And Mr. Gerard has attempted to explain away that email as a mistake. He says he was confused when he sent it, but the district court was well within its discretion to decline to credit that explanation, particularly given the defendant's misrepresentations regarding the scope of their misappropriation. And it's certainly defendants have come nowhere close to showing this court that that credibility determination was reversible error. So can you help me with a, can you help me with a record? Can you tell me where the judge found that they had solicited everybody? So the last email is at ER 1039. No, I'm not asking about what emails are in the record. I'm just asking if you can show me where the judge had made a finding that they had solicited everybody on identified in the trade secrets. Yes. So that was at, or I have a number of different sheets in front of me. I believe it's, it's, it's on the page. Okay. Here it is. So pages 19 through 20 at the district court says the record supports the conclusion that the defendants used the exam works trade secrets. He goes, she goes on to say that one is that March 19th email that I just referred to. She then explains Gerard now says he was confused, but that does not explain away his attaching a link to the spreadsheet, to his message. So that is a factual finding by the district court that the, that the March 19th email is evidence that the defendants used the, the master spreadsheet of one. Is it evidence of the scope of the use? I mean, you, they used by emailing it to each other. That's, that's also unlawful use under the trade secret statute, but did they actually use it to solicit the number of customers that the, that the appellants are now enjoying from doing business with? Yes. So the March 19th email is evidence of a solicitation of customers. Mr. Gerard says that he used the master spreadsheet to blast out their message. And so the district court found that the preponderance of the evidence at this very preliminary stage was that in fact, they had solicited a no number of respect to any given customer on that list. That email is sufficient evidence to show that some solicitation occurred. And again, going back to page eight of the reply brief, the defendants do not dispute that that's the injunction here is appropriate with respect to the customers they have solicited. Another very important point here is the district court's finding that the defendants were not being forthcoming about the scope of their misappropriation at a preliminary injunction stage when all the court had before it was the very tip of the iceberg with respect to discovery. It was very reasonable to conclude that a broad preliminary injunction was necessary while the parties engaged in discovery to determine the true scope of the defendant's misappropriation. And I can point the court to the misrepresentations that the district court had in front of it at the preliminary injunction. What about the suggestion that Judge Hurwitz offered to have something along the lines that they're allowed to conduct business with including soliciting business of individuals or entities that they can basically show an independent source outside of the trade secret materials? There are two problems with that approach. One is again that the scope of the theft here is something that is unprecedented in any of the cases that either party cites. So they have the entirety of exam works business playbook. And as the district court found, although there was an order in place requiring the defendants to turn over all of that information, they were dawdling in discovery, they were causing delays, they were shifting positions. I point the court to page 55 of the ER where the district court during the hearing points out that the defendants have not been forthcoming, that they have been as more discovery revealed that what they had said. Right, but if they can demonstrate to the district court satisfaction that the information on a client, a given client that they obtained from publicly available sources, what would be wrong with that? At that stage during the preliminary injunction phase when the parties are still engaging in discovery, you would end up having to take the defendant's word for that. I mean, Mr. Shamas says they've turned over all the materials. They made that representation at the preliminary injunction hearing. It just last month, another repository was found with exam works information on it that was being held by Mr. Baldini. These are not defendants who can be trusted to police themselves and the risk to exam works business during this period of discovery where they ultimately don't know what was stolen. They don't know how defendants have put it to use. I think Judge Hurwitz was emphasizing earlier that we are at a preliminary stage. This is a preliminary injunction to keep the status quo in place while the parties engage in discovery to determine exactly what happened. Once that discovery has been completed and the court's determining what sort of permanent injunction to put in place that might well be narrower, but we combine the vast scope of the misappropriation here with the evidence of vast solicitation with the evidence that the defendants were being dishonest before the district court, it was well within its discretion to say I need to put in place here a broad preliminary injunction that the district court can police, that exam works can police to make sure that the defendants are complying and not throwing away exam works customers unlawfully during this period where exam works doesn't really have all the information about what was stolen. Your colleague on the other side makes the point that the number of exam works customers is just so broad that his clients are, there's essentially no one else they could do business with. Do you agree with that or is there some other customers out there? No, thank you your honor for raising that. The district court made no finding and the defendants presented no evidence that an injunction barring them from doing business with exam works customers whose information they stole would deprive them of functioning in the industry. To the extent they are taking that position now, what they're saying is that the scope of their theft was so vast that they cannot operate in the industry without soliciting exam works customers whose information they stole. And if that's their position, then they've shown that the scope of the Let me let me ask the question I asked at the beginning in a slightly different way. Do you do agree that it would be improper for a district court to prevent them from doing business with someone whom they didn't solicit but who came to them simply because that person was a prior customer of exam works? No your honor, I would disagree with that under the customer list that the entire business playbook. And there is precedent for the proposition that when a defendant has stolen essentially the recipe book, I mean what they have here includes all of the fee arrangements that exam works has with its doctors. The profit margins that the negotiated rates as the district court pointed out, that information makes it incredibly easy for a competitor to lure away those doctors simply by offering. So if I understand it then your position is that the district court could in a permanent injunction say you can conduct business if you want defendants, but you may never do business with anyone who previously did business with exam works? No at the permanent injunction stage we will have completed discovery. We will have some assurances that the defendants have in fact. That wasn't the question I asked, is the question would it be legal at that stage to simply prohibit them from doing business with anybody who ever did business with exam works? I would have to know the state of the record at that point. So you don't, you don't think the law would make that too broad an injunction, a permanent injunction from now on forever no better exam works owns these customers and you may not do business with them? Well I would point the court to the decision by this court in that in MAI where the court entered a permanent injunction that prohibited the defendant from doing business with MAI customers whose information he had obtained during the course of the employment and that was a case where the actual scope of the I thought the MAI injunction was slightly less broad than that, but you you may be right. I thought the MAI injunction said where knowledge of any such customers was obtained during his I have that they cannot maintain any contact where the customer information was obtained during the course of MAI employment which is at the pin site here. I think it's 514. And so here the defendants are not being enjoined from doing business with any customers whose information they stole. And to be clear they didn't just steal it, they were extensively sharing it within MAI. I don't think they can dispute that at this point. They were sharing it with Dr. Feinberg, with their other investors. They were, I mean there is an injunction in place which they're not contesting that prevents them from using any of the information. If evidence were to come to light that they are continuing to do so, the consequences for them in front of the district court would likely be very serious. But that seems to me a very different question from whether they can be enjoined from going online and finding the name of a doctor or dentist and reaching out to them and doing business with them so long as they're not using the trade secrets. Again your honor, I would go back to the defendant's lack of honesty with the district court when there's an asymmetry of information and the defendants have, are the only parties in this case who have any sense of the scope of their misappropriation. We would not be able to, it wouldn't be a fair playing field before the court if they were to simply say oh no we got this information elsewhere. Until discovery is complete we need to preserve the status quo to have in place an injunction that both exam works and district court can monitor before discovery is complete. And that reminds me, I do quickly want to respond to Mr. Chavez's point that the defendants don't have the spreadsheets anymore and therefore can't know if they're in compliance. In fact Mr. Chavez, the attorneys have access to all of the discovery here and so the defendants can always go to him and say is it permissible for me to solicit or do business with this particular customer and he can advise them on that. Can I ask one more? Judge Wynn. Oh of course, of course. Your friend didn't know the answer to this precisely. When is the trial scheduled? I'm not sure of that either. I know and I know the parties are still in discovery. Okay. Thank you. Thank you. Okay. Your honor, I just wanted to bring up a few points here. First there is no authority for the proposition that because former employees have access to trade secret material, and here we don't have access, but if we did then we can be prevented from doing work with those lists. In fact, as we cite in our reply brief, the TRG case, which is the retirement group case, says exactly the opposite. It says whenever, it says they reject the broad, they reject the notion that prohibitions on competition are permissible whenever the employer showed that the employee had access to information purporting to be trade secrets. In the TRG case, the reason why it was so important is because it had two provisions. One provision was you can't use our trade secrets. Another provision was you can't solicit at all, period, and the court said no, you can't do that. You're protecting trade secrets under I think it was prong three and prong four goes too far. This is exactly the case we have here. We have an issue where they are saying you have trade secrets, so therefore you can't do business with anybody. I would point out that there is significant evidence down below that we raised that said that we are shut out of the industry. That's on ER 252 and 231. These are uncontested declarations from my clients saying that exam works with everybody and they're unable to do the industry as long as this injunction is in place. Just to address the issue of can't conduct with anyone we solicited, the district court did not make a finding that we solicited everybody on their list. As was pointed out, the district court finding was just that solicitation was made using the spreadsheets. If you want, you can change the injunction to cannot conduct business with anybody who you have solicited from their spreadsheet. That would be a step closer to what we think is proper, but at least modify the injunction to recognize that we have to have solicited the person to bar us from doing business with them. I would also add that it's not true. At this point, you're saying the district court did not make any findings as to the number of exam works customers that your clients solicited using exam works trade secrets. The fact of that was found, but the extent of it was not. Is that your position? Correct. In fact, we actually filled the gap where there should have been evidence, where the district court should have demanded evidence of who was solicited. We submitted evidence from IPM, who was the employer that my clients were working for at the time. We submitted evidence that there was no solicitation during the key months of March and April of this year that were more than, I think, 6,000 or 5,000 was the limit. That's of any solicitation from anybody. That evidence was, again, unrebutted. It shouldn't have been our burden to show we can't do business with them, but that was never made. Therefore, on that, your honors, unless you have any more questions, I would submit. All right. Thank you very much, counsel, for both sides for your argument today. The matter is submitted.
judges: Nguyen, Hurwitz, Bress